***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Pamela T. Young, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 *********** EVIDENTIARY RULING
The Full Commission finds that defendant has failed to show good ground in support of its Motion to Receive Further Evidence filed 20 June 2001. Accordingly, said Motion is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 20 July 2000 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. At all relevant times herein, the defendant was a duly qualified self-insured under the N.C. Self-Insurance Guaranty Association.
4. On 30 July 1999, defendant filed a petition in bankruptcy. Pursuant to G.S. § 97-133, upon Defendant's Petition in Bankruptcy, the Guaranty Association became obligated to pay "covered claims" of employer and deny all others.
5. On 8 December 1999, plaintiff filed an Industrial Commission Form 18 reporting to defendant an injury alleged to have occurred on 19 May 1999.
6. The parties stipulated to the plaintiff's medical records from Charlotte Orthopedic Specialists, PHA Family Practice, Nalle Clinic, Presbyterian Laboratory Services, Walgreens, University Medical Associates, and Carolinas Healthcare System.
7. Plaintiff's average weekly wage for the relevant dates herein yields the maximum compensation rate for 1999 of $560.00.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 20 July 2000, plaintiff was a fifty-seven (57) year old truck driver who had completed the eleventh grade.
2. On the evening of 19 May and 20 May 1999, while driving defendant's truck from Ohio to Charlotte, North Carolina, plaintiff ran over a bump in the highway somewhere in West Virginia, causing his truck seat to bottom out. When the seat bottomed out, plaintiff felt the immediate onset of pain in his lower back.
3. Plaintiff stopped the truck and walked around for a few minutes to get some relief from the pain, then proceeded to his destination in North Carolina where he had to unhook the tandem trailers that he was pulling. Upon arrival in North Carolina, plaintiff pushed the dolly of the tandem trailer and felt an additional aggravation of the pain that had started when the seat bottomed out in West Virginia.
4. Plaintiff testified that he called into defendant's central dispatch and reported that he had injured his back, but when he arrived at the Charlotte, North Carolina terminal during the early morning hours of 20 May 1999, he did not report the incident or the injury to anyone at the terminal.
5. Plaintiff did not return to work until Monday, 24 May 1999 due to his low back pain. Prior to returning to work, plaintiff testified that he called central dispatch and was told to talk with Ms. Jean Farmer, the company nurse. Plaintiff further testified that Ms. Farmer spoke with him over the telephone and cleared him to return to work.
6. Plaintiff continued to drive for defendant until approximately 24 July 1999, when he was laid off in anticipation of the bankruptcy filed on 30 July 1999. Defendant ceased trucking operations on or about 30 July 1999.
7. Because he continued to experience back pain, plaintiff was examined by Dr. Sara Beyers, a general practitioner. Plaintiff was then referred to Charlotte Orthopedic Specialists, where he was treated primarily by Dr. Elmer Pinzon, a physical medicine rehabilitation specialist.
8. Dr. Pinzon opined, and the Full Commission finds as fact, that plaintiff suffers from discogenic pain that he has objectively verified with various diagnostic tests, and that the pain is isolated primarily in plaintiff's low back region. Dr. Pinzon determined that plaintiff is not currently a candidate for surgery, but is a candidate for other procedures that may tend to reduce his pain or lessen his disability, such as the I.D.E.T. procedure.
9. Dr. Pinzon further opined, and the Full Commission finds as fact, that the incident of the seat bottoming out on 19 May 1999 was a likely cause, to a reasonable degree of medical certainty, for the discongenic pain symptoms for which he has treated plaintiff.
10. Either Dr. Pinzon or one of his colleagues at Charlotte Orthopedic Specialists has kept plaintiff completely out of work from 18 November 1999 through 24 July 2000 and Dr. Pinzon testified that plaintiff would probably never be able to return to work as a truck driver.
11. Following the bankruptcy of defendant, plaintiff found a new job as a driver with Yellow Freight, but he testified that as of 30 September 1999, he was unable to continue driving for that employer due to the pain in his back from his 19 May 1999 work-related injury. Plaintiff testified that he has not worked for any employer in any capacity from 30 September 1999 through the date of the hearing before the Deputy Commissioner.
12. The Full Commission has reviewed the entire record of evidence, including but not limited to the evidence, testamentary and otherwise, from Dr. Quigg, Dr. Pinzon, Dr. Beyers, Donald Janson, Stephen Matthew Ewing, James T. Stallings, Jerry K. Dellinger, Isaac Ted Stowers, Jean Farmer, and Ronald Greenhawk. After such review, the Full Commission gives greater weight to the testimony of plaintiff regarding the circumstances of his work related injury along with his condition and ability to work subsequent to that injury than it does to the others who testified. Furthermore, the Full Commission gives greater weight to the medical testimony regarding causation and disability given by Dr. Pinzon than it does to that given by Dr. Quigg.
13. Although plaintiff was traveling from Ohio to North Carolina when the incident occurred in West Virginia, plaintiff is a resident of North Carolina, plaintiff was based out of defendant's Charlotte, North Carolina terminal, and plaintiff began and ended his trips for defendant in North Carolina. North Carolina has jurisdiction over this matter and it is subject to the North Carolina Workers' Compensation Act.
14. The circumstances of plaintiff's 19 May 1999 injury constituted an interruption of his normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
15. On 19 May 1999, plaintiff sustained an injury by accident to his back arising out of and the course of his employment with defendant that aggravated or exacerbated his pre-existing, asymptomatic back condition. In the alternative, on 19 May 1999, plaintiff sustained a specific traumatic incident of the work assigned which aggravated or exacerbated his pre-existing, asymptomatic back condition.
16. Defendant had actual notice of plaintiff's injury when plaintiff alerted central dispatch of his injured back on 20 May 1999 and also through his 24 May 1999 communications with Jean Farmer. Therefore, plaintiff had a reasonable excuse for not giving written notice within thirty days of the accident and defendant has not been prejudiced thereby in any manner.
17. Based upon the evidence of record, plaintiff's average weekly wage on 19 May 1999 was $978.62, yielding the maximum compensation rate for 1999 of $560.00.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction over this claim even though certain events occurred outside the state. G.S §97-36; See, Perkins v. Arkansas Trucking Services, Inc., 351 N.C. 634
(2000).
2. Based upon the evidence of record, plaintiff's average weekly wage on 19 May 1999 was $978.62, yielding the maximum compensation rate for 1999 of $560.00. G.S. § 97-2(5).
3. Plaintiff's failure to give written notice to defendant of his work related injury is reasonably excused and defendant was not prejudiced thereby in any manner. G.S. § 97-22.
4. On 19 May 1999, plaintiff sustained an injury by accident to his back arising out of and in the course of his employment with defendant that aggravated or exacerbated his pre-existing, asymptomatic back condition. G.S. § 97-2(6). In the alternative, on 19 May 1999, plaintiff sustained a specific traumatic incident of the work assigned which aggravated or exacerbated his pre-existing, asymptomatic back condition. Id.
5. As a result of plaintiff's 19 May 1999 injury by accident, he is entitled to be paid by defendant ongoing total disability compensation at a rate of $560.00 per week for the periods of 20 May 1999 through 23 May 1999 and from 1 October 1999 and continuing until plaintiff returns to work or until further Order of the Commission. G.S. § 97-29.
6. As a result of plaintiff's 19 May 1999 injury by accident, he is entitled to have defendant pay for all medical expenses incurred or to be incurred. G.S. § 97-25; G.S. § 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability at the rate of $560.00 per week for the periods of 20 May 1999 through 23 May 1999 and from 1 October 1999 and continuing thereafter until plaintiff returns to work or until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fees hereinafter provided.
2. Defendant shall pay for all of plaintiff's medical expenses incurred or to be incurred, including treatment recommended by Dr. Elmer Pinzon and his colleagues at Charlotte Orthopedic Specialists.
3. As plaintiff has not yet reached the end of the healing period for his back, this Opinion and Award does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment, if any, for his back, which may be due, either party may request a hearing from the Commission to resolve this issue.
4. A reasonable attorney's fee of twenty-five (25%) of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. From the compensation which has accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel, with plaintiff's counsel receiving every fourth check thereafter.
5. Defendant shall pay the costs, including expert witness fee in the amount of $175.00 to Dr. Gary R. Quigg.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER